Case number 23-1757. Marga Pierre-Noel, Ms. Pierre, on behalf of her minor child K.N. Ippalens versus Bridges Public Charter School and District of Columbia Municipal Corporation. Mr. Seibert for the Ippalens, Mr. Gerten for the Eppolee District of Columbia, Ms. Baum for the Eppolee Bridges Public Charter School. Good morning council. Mr. Seibert, please proceed when you're ready. Morning, your honors. Mr. Seibert, before you begin, I am at a loss to know why we didn't find out until yesterday that this child has not been in school or at least at Bridges all year long. Oh, well, I think to directly answer that, it was not hidden by any means. I mean, this was yes, I knew about it. And of course, at the same time, and why didn't you inform the court? Well, I guess because I think it's beyond the record for the first part. I mean, the IEP only lasted for last school year. So, I mean, this entire time, direct effect on one of the defendants, the Bridges School, if he's not even in that school. Well, no, I respectfully disagree with that. I think that what needs to be mentioned in all this, the backstory, okay, is that last summer, they had another IEP meeting. And at that IEP, Bridges decided to take away the homebound services for KN. That's not in the record, but they decided to take the homebound services away. So my client was faced with, well, I'm not going to get any services at home. So what do I do? And she ended up finding a private school that would take him on a contingency fee basis that was opening a new school in the District of Columbia for starting this last fall. So faced with no services at home versus getting something from the private school, she chose the private school. And I think it's important to know that the relationship in these kind of tuition reimbursement situations for private schools, there's an equitable consideration where the child is more likely to end up going back to that same public school, because the public school has an incentive to offer the child a FAPE. Because if the parent acts unreasonably in delaying or continuing private school, she might get that tuition deducted or diminished. So there actually is an incentive for that public school to take the child back to offer a FAPE and offer the services he's entitled to the IDEA. And if you want a case for that, Leggett versus District of Columbia from this circuit addresses that point. Is your position that it makes no difference that one of the defendants, that is the Bridges School, is not, he's not enrolled there? Is that your position? And that it makes no difference? And hasn't been enrolled there for this whole year? Well, no, I think, I mean, principally, the District of Columbia is responsible for the child is seeking in this case. All right, but you've got another defendant you've sued, Bridges. Well, I mean, I guess that I don't think any of this was hidden from Bridges. I mean, Bridges knew what was going on. Well, I'm going to ask Bridges the same question. Just go ahead with your argument. Well, I think, again, because it's capable of repetition while evading review. So in my mind, this entire time, what's the current status? He's enrolled with DCPS and the district continues to deny him transportation from his residence door to school and all the way back. And the school is not Bridges anymore. The relevant school would not be Bridges. It's another school. It's another District of Columbia public school, correct. But there's the same issue about where and whether there'd be a pickup at home. Correct. The state agency's obligation to transport the child all the way from his residence door to the school and what's the status of the IEP? That's the one that gives rise to the dispute. So IEPs only last for a year by their nature. And so, you know, the failure to implement claim was only good for the 22-23 school year that it was active. But at the same time, the legal issue in this case is a broader IDEA question of what does transportation mean in the statute? What do supportive services mean? So this is the exact type of legal question that's right for capable of repetition while evading review. Does the new IEP have the same terms as the one before us? No, because in the wake of the district court decision, the LEA decided to take that service off. So because of the district court's action, they took that transportation away from my plan. So the current IEP doesn't even doesn't provide for transportation services. It does, just not the services between the bus and the haul. And the carrying services. Right. But again, because the legal question in this case is, I mean, the district court even said, the judge said himself, this isn't failure to implement. This is about what does this child require under the IDEA? What is this child entitled to under the IDEA? What does transportation mean? The you know, in general, when a service gets put on an IEP, unless that IEP is challenged, the the appropriateness of that service is presumed correct. But this district court said that's not the case. So the issue in this case is about the design of the IEP, about what appropriate services are. It's not we take the case essentially on the idea that even though the current IEP doesn't include the disputed service, everybody's operating on a common understanding that if that disputed service were, in fact, within the compass of transportation under the IDEA, then it would be part of the IEP. So your view is there's still a concrete dispute about whether transportation encompasses the pickup at home and in particular, the pickup at the door to the apartment, because everybody thinks that even though the IEP currently doesn't have it, that's because that service was withheld by the district. If as a matter of law, the IDEA did cover that kind of pickup within the compass of transportation, then the IEP would include it. Correct. Is that the way you're looking at it? Yes. And the IEP would be inappropriate currently. But I thought I thought the way these suits arise is that a service is included in the IEP. And then if it's withheld, it gives rise to an action to challenge the withholding of that. But if there's no transportation included in the IEP, then what's the what's the precise claim before this court now? Well, I think the claim is the same. So quite frankly, I don't think it matters whether the service is on the IEP. IEPs are not contracts. You know, IEPs are the they're supposed to be the compilation of all of the services that the child needs under the statute. So quite frankly, an IEP doesn't have to exist in order for the child's rights to the services that the child needs under the IDEA to exist. The IEP is just the vehicle to memorialize the services. But if a service is not an IEP, the child is still entitled to it if he's entitled to it under the IDEA. But not if there's an agreement. I mean, an IEP could be kind of an accommodation where everybody who's at the table gets together and says, you know, we've got some disputes about the parameters of this, but why don't we all just come together and avoid all that by by collectively agreeing on an IEP that that doesn't deal with this issue anymore. We're all OK with it. At that point, there wouldn't be a dispute any longer for us to. If my client waived or didn't think that this transportation was required anymore, then yes, she would waive her right to that under the IDEA. But that's not the facts of this case. She's been insisting on this service since COVID, since the pandemic ended, if I can be so brave to say that. And we were returning to in-person services. Can I ask you a question on the merits then, just to go to the merits? So your view is that the transportation encompasses pickup at the door, at the door to the apartment? Yes. And if that's true, and let's just assume for these purposes that you're right about that. I just want to explore the implications of that. If that's true, would it mean that that anyone in this situation where they had transportation services as part of an IEP would be entitled to pick up at the door, regardless of whether the parent is able to on their own assist the child to get to the parking lot or the curb? Because in this case, I understand that the factual predicate is that there's actually not a parent, at least for some days of the week, who's able to perform the, to carry the child outside to the vehicle. And that's why there's a need to have somebody come to the front door and pick them up and carry the child. What I'm wondering is, suppose that this case is resolved in your favor so that transportation services is construed to at least be capable of going to the door to the apartment. My question is, would that then mean that that's what transportation services means? So regardless of whether a parent is able to carry the child outside the door to the vehicle, now we'd have a reading of the statute that would say that the parent doesn't have to do that anymore because the school's obligated to do that. If the child's disability, if the unique needs of the child require transportation between the school bus and the door of the residence, then that service is required. So it wouldn't be required for all students with disabilities because most students can translocate themselves between the residence and the school bus. Right. But it does put the onus then for that kind of, for that type of child who has that kind of disability, it puts the onus on the district to do it regardless of the parent's ability to do it. Correct. Yeah, correct. And I think that again, I mean, all transportation convenience is parents. I think that IDEA services in general convenience parents, I mean, a parent could provide FAPE to their child. I mean, they could quit their jobs, they could homeschool. It's not a requirement other than school attendance laws in the district. So, you know, I think even with non-disabled children, school bus services, it's not as if everybody can't take advantage of a school bus regardless of a parent's ability to themselves take a kid to school. And so in a way, the IDEA comes along and says that those kinds of services ought to be conformed in such a way that disabled children can get benefit from transportation as well. With, I guess, the one caveat that in the district there are no school bus services for non-disabled students. It's WMATA, it's the school, it's the regular buses and the train. But otherwise, yes, I agree with the statement. And I do see that my time is up, but you know, I think that, you know, particular to the district court's decision is that, you know, we're not trying to seek an expansion of transportation. I mean, the ordinary and plain meaning of transportation is to move someone or something from one place to another. And the district court recognized that. But he thought that there was another narrower version. And that narrower version, unfortunately, clashes with other provisions of the Act. And that means that it's, he didn't do a whole text reading of the Act. And only the broader definition of transportation, moving someone from one place to another, gels with the rest of the Act. So let's assume that I, again, just assume for arguments purposes that I'm on board with your understanding of transportation, that it's taking someone from one place to another. And here, the one place is this home and the other place is the school. So transportation in this particular context means taking someone from home to the school. Then the question becomes, what does it mean to take somebody from the home? And would you think, for example, that if it's a situation in which the child, because of this out of the home, needs help actually getting from point A to point B within the home, just to get to the front door, that it could, that board transportation could encompass an obligation on the part of the district to go inside the home to carry the child from point A to point B inside the home and then on out to a vehicle? So no. I think that, I mean, first off, my client's not asking for any services in the home, but going on the merits of it, or the hypothetical, I should say. No, I think that under Tatro and Geredef, the Supreme Court was clear that related services are designed for the child to reach, enter, remain in, and exit the school building. And I think that from the door of the residence to the school and then all the way back, that that's reaching and that's exiting the school building. But when you're ready for school, when you're dressing, eating breakfast, whatever, to get ready for school, that's different in kind than reaching school. It's a precursor, perhaps, but it's different. It's not the same as reaching. So, I mean, I do want to add a caveat that I think if a child is in a homebound program, a residential program, then, of course, related services are required in the home or the residence. But no, when a child is just living at home, like this child and attends day school, no, I don't think any related services are required in the home. Right. So, I'm assuming a situation in which the least restrictive environment is the school rather than the home. And so, it's incumbent upon the district to help get the person, to help get the child to school. And then the question becomes, in that situation, if it's necessary for the child to get to school, that someone actually come inside the home to help, then you would say, well, that's not encompassed by transportation because transportation stops at the residence door. Correct. I think the natural reading in the context of the IDA is it's the residence door to the school and all the way back and nothing larger. Additionally, you know, I think it does need to be noted that, you know, the IDA does particularly talk about unique needs. And it says it all over the place. It says it in the purpose. And actually, in this particular provision, the 1413G, the direct services provision, it says that when a state like the district decides that it's going to provide a regional or statewide transportation system, that that system is going to meet the needs of the children it serves. And because the district has decided to take on all the transportation from the residence door to the school and back, that, you know, they have to meet the needs of those students. It says so right in that particular section of the act. And I do want to say that I don't, we're not seeking to enlarge the meaning of transportation. I mean, the adjectival phrase is only going to modify transportation. I mean, there's other types of transportation. I mean, there's military transportation. I think the defendant brought up the crime of someone abroad from the past, or even transportation to a doctor's office or to some other maybe service in the community or event in the community. So we're just looking for transportation, moving someone from one place to another, between the home and the school and back, and doing that in a way that's designed to meet the child's unique needs. And then I think it should also be mentioned that, or not be lost, that, you know, the IEP team got together, and they looked at this child, and they said, what are the unique needs of this child? Well, this child cannot translocate himself between the door of the residence and the school bus. And quite frankly, it doesn't matter that there are stairs. For KN, he couldn't do it even if there was a flat road between the residence and the school bus. He's not able to operate his wheelchair, not able to wheel it himself. He has cognitive deficits that even if he could do those things physically, he might not even make it to the bus. He doesn't have the judgment that's required to do that. So, you know, I think, again, that at the heart of this case are the unique needs of this kid. And the IEP team did exactly as they're supposed to. And unfortunately, then the state said, no, we don't think that that's required, and we're not going to do it. Even though their policy, when you look at their policy, it says that we're going to provide transportation from the residence to the school and back one round trip. And actually in the policy, it says we're going to use the address that you provide us when you verify residency in the district. And the address in the record is the apartment. It's not the apartment building. So I think with that, I've made my argument. Okay, thank you, counsel. We'll give you a little bit of time for rebuttal. Thank you. And we'll hear from the district now. Good morning, and may it please the court. Jeremy Gritton on behalf of the District of Columbia. I welcome the court's questions on any of the issues in this case, but I think it makes the start where Judge Henderson did on mootness. In our view, this case is moot as to bridges, because the student is no longer enrolled there. And the only question really is whether the capable of repetition yet evading review exception applies for the injunctive relief that is sought here. And I think that is a ultimately factual question about whether there's a reasonable probability that the student will be re-enrolled in a public school, either a charter or DCPS. Is he not already? We heard this morning that he's already re-enrolled in the district. So it's not entirely clear. We have been trying for the last few days to figure out his current enrollment status. We understand that they have submitted enrollment paperwork, but he is not yet attending a DCPS school. Unfortunately, it is spring break and all schools are closed. So we have not been able to confirm that information. But I think the ultimate point is, whether it's DCPS or OSSE, it would follow OSSE's existing transportation policy. And if they represent that their intention is to re-enroll in a public school and not to move residences, we would come up to the same problems that we're encountering here. So we think that would satisfy if the court is willing to accept their submission, that that's her intention and that her intention is to move residences. We would ultimately, in a year or two, be back here addressing the same legal question as to the district. I did want to say one thing about, in response to Mr. Seibert's letter yesterday, our position is that compensatory education was abandoned at the district court level. He represents that they could still seek some sort of compensatory education award for the prior school year. They sought that at front of the hearing officer. The hearing officer concluded that no, under the virtual learning program, he was receiving a FAPE and it declined to award compensatory education for the 13 days at that point that he'd been under that virtual learning program. And that's at day 304 to 306. So they had the opportunity to appeal that to the district court and declined. So I don't think there's any award of compensatory education for that year that's on the table in this case or in any future case. So I think that takes bridges completely out of this case entirely. So unless the court has further questions on the mootness issue, I'm happy to turn to the merits. If the court reaches the merits, it should affirm the judgment below because the IDEA does not provide states or schools with clear notice that they must enter the home or carry that student up and down the stairs. And I think the best support for this really comes from Murphy, which says you need to provide states and schools with clear notice. And what is a reasonable administrator going to understand this word transportation to mean? And I was comforted to hear Mr. Seibert's concession that they would not ask the school to enter someone's home. That is directly contrary to what they said in the district court at page 732 of the JA, where they said yes, if that's what the child needed, you would need to go all the way into their bedroom and get them out of bed because our definition of transportation and supportive services has no limit other than the student's needs. So I think that they have acknowledged here that there is a reasonable limit on what transportation means. They're drawing it at the front door of the unit. I think Aussie reasonably drew it at the front door, the outermost door of a residence. So you just you started by saying that there would be no So if you have an apartment complex where the doors are all external actually, each unit has an external door. So there's an entry to an entire complex that consists of 20 buildings. And the particular resident lives in the very back building. You're saying that the district could stop at the front at the street at the front and not have to go in the through the internal routes. No, sorry. I apologize if I misspoke. Under Aussie's policy, and I think this is very clear, they will go to the external most door of a residential building. So I had been imagining when I said apartment complex, something similar to this, where all of the units have internal doors into an internal space. But yes, if it's something more akin to like a row house, where each unit's door faces the outside, they would go up to that unit's door because that's the external most door of the building. And that's been their of a unit when it's outdoors, but won't go to the external door of a unit when it happens to be indoors. Let's just take the outdoor scenario. If there's no stairs, then I take it that the district would have somebody go to the front door and suppose they're in a wheelchair, the child's in a wheelchair, and then the representative would get that child and wheel them to the awaiting vehicle. Yes, under Aussie's policy, that's what they would do, and I think that's relatively common. But then if the child, for whatever reason, can't be kept in a wheelchair, say because there's stairs, then at that point, it's not that transportation doesn't cover going to the front door and taking them to the bus, because you just said that if they're in the wheelchair the whole time and it's a pathway without stairs, it would be covered. So what then takes it out just because there happens to be stairs? So I think that there's two issues, and your question goes to only one of them, which is the stairs and whether or not they would need to physically pick up the student and carry them. So that's one that I think that the word transportation doesn't extend to. And then the other one at issue in this case, but not in your hypothetical, would be entering into a residential building, either the lobby of an apartment or a carrying aspect. I don't think any reasonable administrator reading the IDA and saying, well, we need to provide a transportation system for students with disabilities. That includes picking up physically with our arms a student who's medically fragile, has a lot of special needs. Even though it would encompass picking that student up at the exact same door, the exact same distance, and wheeling them. Yes, and if there's a way to navigate between an external... I mean, that's not the vehicle. I mean, your brief talks about transportation as has to be in a vehicle, right? And the wheelchair becomes one vehicle, and then the van becomes another vehicle. So I don't think our brief was intended to say that there's nothing beyond a vehicle. I think that's the core of the definition is vehicle transportation. When we talk about Department of Transportation or school transportation, we're talking about using a vehicle. I think Ossie's gone a little bit beyond that and said we will escort the student from the external most door. Right, you know, they're getting them to the vehicle as part of the transportation because you're picking them up at the door and you're getting to the school, and that might entail wheeling the wheelchair from the front door to the vehicle, and raising it and making sure the child's safely onboarded to the vehicle. Yes, under Ossie's policy, yes. I think there are other school districts that might draw a line at the curb or at the bus stop, and I don't know whether that would be going as far as the IDEA requires, but Ossie has established a policy that gets you to the external most door of a building. You think it would be a reasonable understanding of the IDEA that all the district has to do is go to a bus stop? So there are certainly schools that do do that. The district doesn't have bus stops because the only buses they operate are through Ossie, and so they'll go to the closest curb or closest I don't think the court needs to address kind of that. No, but I'm just asking for the district's position on that, so just to test out your theory. So if the bus stop is a mile away, then under that understanding, it would be the parent's obligation to somehow get their child to the bus stop, and that would be all the transportation? I think it would be a much closer question, and I think the distance between the residence and the bus stop would be a factor the court would consider. I don't think any court has opined on that question, and if the bus stop is really inaccessible to the family, miles away, then I think you have a question of are you really providing transportation at that point? So I think there are limits, and again, I think this all goes back to Murphy, which we think directs courts and administrators to use their common sense about what is necessary for the student and to draw reasonable lines. I think other lines that courts have recognized include requests to transport a student outside the school district because of a custody arrangement, and the 8th Circuit and OSSEO said no, we're not going to require schools to do that. There's other cases where parents have asked, we want them to go to a different address because on such and such days they're with this parent, and the court said no, you can just provide a neutral system. How many of these questions really relate to the meaning of transportation versus a determination about what is required to assist a student to benefit from special education? So I think if we were to determine that transportation included the act of something like carrying, would there still be, you know, a further determination that would be necessary about whether that was required for the student to benefit from education? Yes, I think there would be, and I'm not sure that's really been explored in this case, mostly because of the student's unique needs here, he wouldn't be able to navigate himself. So I think we've of transportation, which we don't think, I mean, I think even Mr. Seibert's argument of knowledge has reasonable limits. You have to draw a line somewhere, and I think if you just do that, what does the student need to navigate? Then you're all the way into the student's bedroom on the second floor, and you're requiring schools to enter people's homes, get them out of bed, and I don't think any reasonable administrator would think that's what the line is. So OSSEO has, you know, done a lot of work to consider where a reasonable line would be, and it said outermost store of the residence, and it said we're not going to pick up and carry students, and we're not going to do something we think is unsafe. So you're not disputing that the need part of it is met, you're just disputing whether transportation is satisfactory. That's right, and I think even if, you know, we were to determine that the act of carrying is transportation, we wouldn't need to remand for determination about what was required to assist the student. I think you would need to determine that the act of carrying is transportation, and I think you would need to determine that transportation extends all the way to the unit door, and then I think you'd be presented with the question under 1413G of whether the district has reasonably defined the scope of its transportation services as a related service provider, and in our case, I don't think even Ms. Pierone-Wells' brief contests that the district has drawn a reasonable policy that defines OSCE's services, and so in that event, if the IDEA requires this service, then it would fall back on whoever the LEA is at the time we're talking about. It would be Bridges, presumably in the future it would be DCPS. So even under that scenario, the district, the OSCE would not be responsible for that. That's just a question of as between the district and a school. Right. It's not a question as to the need part of the... So are you conceding the need part is met? I think given his needs, I don't think there's been ever been any dispute about his severe... So in this particular context? In this particular context. I'm certainly not conceding that anytime a parent asks for something that there's no inquiry into the needs, but I think with this particular student, there's extensive evidence that's never been contested about his severe cerebral palsy and other needs that would, I think, demonstrate that he would not be able to navigate himself. So yes, for this case, I don't think that would be necessary, but I do think it would invoke the 1413G question. And I think just one other point on what we're thinking about when we look at transportation, we point to a number of other sources that are consistent. We think our definition, including the ADA, when it talks about transportation systems, and none of those sources talk about lifting and carrying or entering someone's home. And I think that those are reasonable lines that Aussie has drawn, and we would ask the court to affirm that judgment. Unless the court has any further questions. Thank you. Thank you for your argument. Ms. Baum. Good morning. Lauren Baum on behalf of Bridges. May it please the court. We agree with the district that the case as it relates to Bridges is now moot. I apologize. I was not aware until last Friday that the student was no longer enrolled at Bridges. We had received, Bridges had received notice in September, late September, that the student was at a private school. It seemed like the private school was not yet operating in the District of Columbia. It was a New York-based school. So it was unclear whether the student was actually going to be attending there, whether this was some kind of future enrollment. So I reached out to the parents' council asking, you know, what does this mean? Is the student attending this school? I did not receive a response. I know that Bridges attempted to reach out to the parent. I'm not what response they got. At some point, they did unenroll the student. I just was not made aware of that fact. So I apologize for that. But as it stands, there's no dispute that Bridges is no longer the student's LEA and therefore no longer has any role in his education. And so as a result, there's no effectual relief that the court could grant with respect to Bridges. And therefore, we believe the claim as to Bridges is moot. When Bridges was the LEA, it is Bridges' position that it was in compliance with the law as it relates to transportation. As you've heard, the District of Columbia is uniquely set up with respect to special education transportation. The state education agency has elected to assume responsibility for that service pursuant to 1413G. And as such, that state education agency is responsible for implementing that service if it is properly documented on the IEP. Mr. Seibert himself admitted just a few moments ago that the IEP team did exactly as it was supposed to do, which is review the student's needs, document his need for transportation and related supports on the IEP, and submit that to OSSE for implementation. At that point, Bridges' obligation as it relates to transportation is complete. While the district certainly does have some discretion as to how it provides transportation, that policy and those decisions cannot violate the IDEA or result in a denial of FAPE. If there is an exception that needs to be made to that policy as a matter of law, then it is our submission that the district must make that exception. It's also our position that the district cannot abdicate its responsibility once it is assumed. So nothing in 1413G preserves a role for the school once the state decides to provide the service. Similarly, nothing in OSSE's transportation policy preserves a role for the school in implementing transportation once it properly documents the need and submits that information to OSSE. So we believe it is clear that Bridges is not liable in this case. Thank you, Council. Thank you. Mr. Seibert, we'll give you two minutes for a rebuttal. All right, well to start with the last point, so we agree with Bridges that if you look at 1413G that yes, D.C. does have some discretion in the manner it provides transportation services, but the next sentence, so the last sentence in this section says that it still has to be provided in conformity with the rest of the subchapter, which is sections 1411 to 1419 of the IDEA, and that includes the requirement to provide a free appropriate public education, includes the requirement to educate the child in the least restrictive environment with disabled and non-disabled peers. So they have some discretion, but it still has to meet those minimum requirements. Next, I think that, you know, the district brought up something about the home being inaccessible, and I think it's important to note that there's no inaccessibility exception in the IDEA. The district is trying to engraft that language into the IDEA. I actually think it's the exact opposite. When you look at, I believe it's 1412, it says Congress said in exchange for federal funds states, you're going to provide a free appropriate public education to all students within your jurisdiction, and the state understood that its jurisdiction is going to be the geographical territory of its state. So if a student lives on an island in the state, a student lives on a mountain in the state, it doesn't matter. The state understood that it was going to educate all these students within the geographical boundary. I think that Mr. Gurdon brought up comp ed, and I do want to be clear that we received an award of comp ed at the administrative hearing, and it's important to remember that these claims have to go through an administrative exhaustion before they can come to the district court. So the reason that we didn't bring any comp ed for the latter half of the 2022-23 school year is because that claim wasn't exhausted yet. It would have to go back through the administrative procedure first. Additionally, I think, you know, going back to his enrollment in DCPS now, this child has the right to attend a DCPS school. So even if it is sort of still in the paperwork process, it's imminent that he's going to be enrolled in DCPS. It's not a question of whether. They can't deny him an education. He's going to be enrolled in DCPS. So I just want to close with what we seek in this case, which is, Ms. Pierre is here for you to order the district to transport Kayanne, her son, between the residence door of her apartment to the school bus and back so he can attend school, receive an appropriate education with his peers. Thank you, counsel. Thank you, all counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Rao